FRANKENSTEIN, A TAXPAYER, *v.* GOODALE ET AL., TRUSTEES, ET AL.

(Decided March 12, 1928.)

*Mr. Eli G. Frankenstein,* for plaintiff.

*Messrs. Peck, Shaffer & Williams,* for trustees of Cincinnati Southern Railway Company.

*Messrs. Harmon, Colston, Goldsmith & Hoadly,* for Cincinnati, N. O. & T. P. Railway Company.

HAMILTON, P. J. This case is here on appeal from a decision of the court of common pleas, refusing an injunction.

The plaintiff below, appellant here, by his action as a taxpayer, sought to enjoin the defendants, as trustees of the Cincinnati Southern Railway, from carrying out, or putting into effect, a proposed extended lease of the Cincinnati Southern Railway to the Cincinnati, New Orleans & Texas Pacific Railway Company.

The plaintiff in his amended petition pleads four causes of action.

The first cause of action sets up facts upon which appellant claims to be entitled to relief by way of injunction, in that the terms of the lease constitute a lending of the city's credit, contrary to Section 6, Article VIII, of the Constitution of Ohio.

The second cause of action sets up the granting of the right to the city of Cincinnati to build the Southern Railway through the states of Kentucky and Tennessee, and states that the right or charter in the states of Kentucky and Tennessee expires 42 years from January 1, 1928, while the proposed extended lease continues for a period of 99 years from said date, and that the expiration of the right or charter granted by these states is an obstacle to the carrying out of the lease.

The third cause of action sets up the claim that the extended lease would violate the rule of the Public Utilities Commission of Ohio as to the net rental.

The fourth cause of action presents the claim that the extended lease would violate the interstate commerce regulations. It appears that the matter is pending before the Interstate Commerce Commission, in which its approval is requested, and this point will necessarily be determined by the ruling of the Interstate Commerce Commission, in accordance with the Interstate Commerce Act (Title 49, Section 1, *et seq.*, U. S. Code). .

The third cause of action is without merit, and needs no further comment.

The second cause of action with reference to the grant from the states of Kentucky and Tennessee is taken care of by the terms in the extended lease, in that it is provided therein that the extension and

modification shall be subject to the renewal of the rights of the trustees of the Cincinnati Southern Railway in the states of Kentucky and Tennessee, in the securing of which extension the lessee agrees to cooperate with the lessors to the fullest extent, and that if such extension is not secured, neither the city of Cincinnati nor the lessee shall have any claim against the other for failure to secure the same, and all payments of rentals, etc., accruing prior to the expiration of the rights in said states, shall remain the property of the city of Cincinnati, and the lessee shall have no right to make any claim to recoup or recover any payments from the city of Cincinnati.

That no consent on the part of the states of Kentucky or Tennessee is required was decided in principle in the case of *City of Cincinnati* v. *Dexter,* 55 Ohio St., 93, 44 N. E., 520. Subhead 3 of the opinion in that case, page 113 (44 N. E., 525), is to the effect that these states have no property interest in the Southern Railway property, and their consent is not necessary to a sale of the road. If their consent is not necessary to a sale of the road, much less would their consent be necessary to an extension of the lease. However that may be, plaintiff has abandoned all claims for relief under causes of action 2, 3 and 4, and the sole proposition argued in the brief is the question of the city lending its credit or financial resources for the furtherance of private enterprises.

The claim of the plaintiff is based upon his contention that some $6,900,000 of bonds of the city of Cincinnati, issued for the making of improvements under the original and supplementary leases, cov-

ered all improvements that the lessee was obliged to make and pay for, and that in equity the outstanding bonds are the obligation of the lessee, and we gather that he contends that the extension of the lease for 99 years is a continued lending of this credit, and, further, that the provision for the sharing of the net profits, and the language used defining net profits, indicate a further lending of the credit of the city, in violation of the Constitution. The question, it seems to us, was decided in principle in the case of *City of Cincinnati* v. *Taft,* 63 Ohio St., 141, 58 N. E., 63, which approved the extension of the maturity of the bonds, originally issued for a period not to exceed 40 years, at a reduced interest charge. The court upheld the extension holding that the case of *Walker* v. *City of Cincinnati,* 21 Ohio St., 14, 8 Am. Rep., 24, passing on the validity of the act under which the railroad in question was constructed, was conclusive in support of the judgment of the circuit court, which upheld the extension.

The points made in the brief of plaintiff in error concern only certain terms and obligations in the lease. Whether or not they are wise or unwise is not before the court. When we review the extended litigation and numerous cases concerning the Cincinnati Southern Railway, the acts of the Legislature and the decisions concerning the same, and the decisions construing the acts, it would seem that all the questions sought to be raised have been fully settled by the acts and by judicial decisions.

We have the Act of May 4, 1869 (66 Ohio Laws, 80), authorizing the construction of the Cincinnati Southern Railway and the power to lease the same. We have the case of *Walker* v. *City of Cincinnati,*

21 Ohio St., 14, 8 Am. Rep., 24, holding the act valid.

In the case of *Taylor* v. *Commissioners of Ross County*, 23 Ohio St., 22, the case of *Walker* v. *Cincinnati* was distinguished. The court says in the opinion at page 77:

"The proprietary interest in the road [Cincinnati Southern Railway] when completed, is as fully in the municipality as that of any other of its public works. It is the road *'owned'* by the municipality that is authorized to be leased.

In the case of *City of Cincinnati* v. *Dexter*, 55 Ohio St., 93, 44 N. E., 520, in passing on an act authorizing the sale of the Cincinnati Southern Railway, it is stated in the syllabus:

"2. The act of March 12, 1887 (84 Ohio Laws, 82), which authorizes the sale of railways constructed under the act above mentioned, is not in conflict with Section 6, of Article 8, of the Constitution of this state, nor will a bona fide sale, made under its provisions, constitute a loan of municipal credit to the purchaser, or to any corporation that may obtain control of the road, though in making the sale, the parties contemplate that the road will pass into the hands of a corporation, and a per centum of the future gross earnings of the road is to be paid as a part of its purchase price.

"3. Payment of the purchase money in cash is not essential to a valid sale under the statute; the sale is authorized to be made upon terms of payment satisfactory to the designated municipal board."

The terms as to sharing in the earnings and profits as a part of the purchase price were upheld. This, in principle, upholds the provision in the lease regarding rentals based on net profits.

In passing on the legality of the proposition to sell, the court, in *City of Cincinnati* v. *Dexter, supra,* used some pertinent language as to the status of the Cincinnati Southern Railway, and what may be done with it. In the course of the opinion, the court said, at page 109 of 55 Ohio State (44 N. E., 524):

"True, the act [May 4, 1869] only makes provision for leasing roads constructed under its sanction, and does not, in terms authorize their sale; it may not have been deemed advisable at the time of its enactment to confer such authority. But, we think, it does not follow that the power to make a sale of the road must be denied for all time, though exigencies should arise which would seem to require the sale, or render it desirable and advantageous to the owner. A sale made in good faith and for a fair value, under such circumstances, cannot properly be characterized as a loan of the credit of the municipality, directly or indirectly to, or in aid of the purchaser."

This language would apply with equal force to the lease in question bearing on the characterization by plaintiff of its terms as a loan of the credit of the city.

In the case of *Cincinnati* v. *Ferguson,* 12 O. D. (N. P.), 439, questions like those here presented were considered and determined. The second, third, and fourth paragraphs of the syllabus read:

"2. The provision of the Act of April 23, 1898, 93 O. L., 637, 'that the board of trustees of any railway appointed under the provisions of the act to which this act is supplementary be and they are hereby authorized with the approval of the trustees of the sinking fund of said city to agree with the

lessees of any such railway to modify the terms and extend the time of grant in any lease thereof, etc.,' is not unconstitutional. *Walker* v. *Cincinnati*, 21 Ohio St., 14 [8 Am. Rep., 24]; *City* v. *Taft*, 63 Ohio St., 164 [58 N. E., 63].

"3. The provision of the Act of April 23, 1898, 93 O. L., 637, that the said boards of trustees and sinking fund may enter into an agreement with the lessee by which said boards agree that they will issue bonds and devote the moneys arising from the same to the construction of terminal facilities and permanent betterments, and the lessee agrees that annually it will pay an additional rental equal in amount to the interest on the bonds sufficient to provide a sinking fund for the same, does not violate Article 8, Section 6, of the Constitution of Ohio.

"4. The provision of the Act of April 23, 1898, authorizing the boards of trustees 'to agree with the lessees of any such railroad to modify the terms and extend the time of grant in any lease thereof for such length of time and upon such terms and conditions as shall be fixed and provided by said boards of trustees' gives them power to agree to postpone the time of payment of part of the rent due under the original lease, and such an agreement does not violate Article 8, Section 6 of the Constitution of Ohio."

This decision, written by Judge Rufus B. Smith, was affirmed by the Supreme Court April 1, 1902 (66 Ohio St., 658, 65 N. E., 1126).

The only case cited by plaintiff in the brief in support of his proposition that the extension involves the lending of the credit of the city is *State, ex rel. Campbell,* v. *Cincinnati St. Ry. Co.,* 97 Ohio

St., 283, 119 N. E., 735, involving a proposed lease of the rapid transit loop to the Cincinnati Street Railway Company. This case, however, has no application to the case at bar, for the reason that the Cincinnati Southern Railway property is unlike any other municipally owned property. Its ownership, control, operation, and management are controlled by special acts of the Legislature and the powers thereunder, as judicially construed. The case of *Campbell* v. *Cincinnati St. Ry. Co., supra,* brought into question general laws regulating municipalities, general rules concerning the constitutionality of the acts of a municipality, and general constitutional powers. All of these questions may have been pertinent in the presentation of the case of *Walker* v. *Cincinnati, supra,* but whether or not the case was correctly decided is not open to question here.

The effect of the decision in the *Walker case* is fully discussed in the case of *City of Cincinnati* v. *Taft, supra,* and the closing paragraph of the opinion in that case follows:

"It may aid to prevent improper inferences if it is added that it is not intended by any of these observations to intimate the opinion that *Walker* v. *Cincinnati* was correctly decided nor that the maxim *stare decisis* would require the same judgment with respect to independent legislation of like character."

So that the principle announced in the case of *State, ex rel. Campbell,* v. *Cincinnati Street Ry. Co.,* if it had been applied to the *Walker* v. *Cincinnati case* might have required a different conclusion; but the case of *Walker* v. *Cincinnati* settles the law applicable to the Cincinnati Southern Railway, and, as stated in the case of *City* v. *Taft,* the stability of

the judgment in that case will not and cannot be disturbed. As has been repeatedly said, judgments under which rights have accrued will not be set aside after term, merely because they are believed to have been erroneously rendered.

The wisdom or the advisability of the extension of the lease is not before us.

Our conclusion is that the plaintiff has not presented a case entitling him to the relief sought.

The injunction will be refused, and the petition will be dismissed.

*Petition dismissed.*

MILLS and CUSHING, JJ., concur.